UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

3C GROUP LIMITED,

                Plaintiff,

      -v-

REVCASCADE, INC.,

                Defendant.

---

21-CV-5300 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff 3C Group Limited ("3C") and Defendant RevCascade, Inc. signed a term sheet to reflect the general terms and conditions under which 3C might invest two million dollars into RevCascade. The term sheet included an exclusivity provision that generally obligated RevCascade not to negotiate over any sale of its equity securities with other potential investors for 56 days. In this diversity action, Plaintiff asserts that Defendant breached the exclusivity provision when it began to negotiate with a company called Fabric during the 56-day period. Plaintiff further alleges that those negotiations breached an agreement to extend the exclusivity provision beyond 56 days, or, at the very least, violated principles of promissory estoppel. Throughout, Plaintiff alleges that Defendant failed to act in good faith.

    Defendant moves to dismiss the complaint in its entirety for failure to state a claim. That motion is granted in part and denied in part. Plaintiff has stated a claim that Defendant breached the exclusivity provision during the 56-day period described in the term sheet. But Plaintiff has not stated a claim that Defendant breached any exclusivity agreement after the 56-day period expired; violated any principles of promissory estoppel; or violated any duty to negotiate in good faith.

1

I.  **Background**

   A.  **Factual Background**

The following facts are taken from the complaint and are assumed true for purposes of this motion.

About five years ago, Plaintiff 3C Group Limited made an initial investment in RevCascade, Inc. (*See* Dkt. No. 4 ("Compl.") ¶ 4.) In return, Revcascade gave 3C around 4.77% of RevCascade's equity and 10.5% of RevCascade's Series A preferred shares. (*See* Compl. ¶ 6.)

On February 25, 2021, 3C and RevCascade signed a term sheet that reflected the conditions under which 3C might make a further investment into RevsCascade. (*See* Compl. ¶¶ 10-11; Dkt. No. 4-1 ("Term Sheet") at 1.) The agreement contemplated that 3C would invest two million dollars in exchange for a majority stake in RevCascade. (*See* Compl. ¶ 11; Term Sheet ¶¶ 3-4.)

Although the term sheet did not obligate the parties to follow through on that transaction, (*see* Compl. ¶ 12; Term Sheet at 1), it included an exclusivity provision to aid further negotiations, (*see* Compl. ¶ 12; Term Sheet ¶ 15.) The exclusivity provision generally stated that RevCascade would not otherwise "engage in the negotiation or continued negotiation of, or solicitation of, any sale of its equity securities" for fifty-six days. (Term Sheet ¶ 15.) It was included to offset the "significant time and resources" that 3C dedicated to facilitating the "proposed [t]ransaction." (*Id.*)

The complaint alleges that RevCascade engaged in negotiations during this period to sell its securities to another company — Fabric. (*See* Compl. ¶ 43.) It alleges that RevCascade "began regular discussions with Fabric" during the exclusivity period relating to a contract to provide services to a company named ABG. (*See* Compl. ¶ 16.) It also alleges that RevCascade

2

began "to negotiate with Fabric during the exclusivity period." (Compl. ¶ 26.) During these discussions, the complaint alleges, RevCascade informed 3C that it "had been approached by Fabric about a joint takeover of RevCascade with 3C." (Compl. ¶ 28.) 3C declined. (*See* Compl. ¶ 28.)

The complaint also alleges that RevCascade and Fabric engaged in negotiations after the fifty-six day period expired — but within an extended period of exclusivity with 3C. (*See* Compl. ¶ 41.) During the fifty-six day period, 3C allegedly learned that a company named Souler, Inc., had filed a lawsuit against RevCascade. (*See* Compl. ¶¶ 17-19.) The complaint alleges that "[t]he parties, through their words and conduct, agreed to extend the exclusivity period given the filing of the Souler lawsuit so as to give 3C time to evaluate the allegations made." (Compl. ¶ 41.). RevCascade's co-founders "agreed to give 3C the time necessary to conduct [an evaluation of Souler's claim]," "provid[ed] records to facilitate this review," and continued to "work towards the closing of the 3C investment." (Compl. ¶¶ 19, 21.) The complaint alleges that 3C understood their arrangement to be that the parties "would extend their exclusive discussions to permit 3C to evaluate the litigation and then resume their progress on the transaction." (Compl. ¶ 21.) The complaint further alleges that, on the day after the fifty-six day period elapsed, RevCascade posted documents to a data room intended for negotiations "to make them accessible to Fabric." (Compl. ¶ 33.) RevCascade ultimately announced a deal with Fabric. (*See* Compl. ¶¶ 36-37.)

Throughout, RevCascade allegedly failed to "negotiate deal terms with 3C in good faith." (Compl. ¶¶ 48, 50.) The complaint alleges that RevCascade "slow walked its provision of information [to 3C] . . . so that it could pursue a deal with Fabric." (Compl. ¶ 34.) It also alleges

3

that "RevCascade was unreasonably slow to provide materials necessary to 3C's due diligence, including delaying delivery of existing key personnel employment agreements." (Compl. ¶ 34.)

### B. Procedural History

3C Group Limited filed this action on June 15, 2021. (*See* Compl. at 11.) The complaint asserts a claim that RevCascade "breached the Term Sheet's exclusivity provision." (Compl. ¶ 43.) It also asserts a claim that RevCascade breached an "agree[ment] to extend the exclusivity period." (Compl. ¶ 41.) The complaint then asserts a promissory estoppel claim based on allegations that RevCascade represented after disclosing the existence of the Souler litigation that "it still wanted to deal exclusively with 3C," and 3C relied on those representations to its detriment by incurring expenses to perform an audit related to that litigation. (Compl. ¶¶ 54-55.) Lastly, 3C brings a claim that RevCascade breached the covenant of good faith and fair dealing by, among other things, "slow roll[ing] due diligence materials." (Compl. ¶¶ 46-50.)

RevCascade has moved to dismiss the complaint in its entirety under Federal Rule Civil Procedure 12(b)(6) for failure to state a claim. (*See* Dkt. No. 11.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at

558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

### III. Discussion

Defendant argues that each of Plaintiff's claims fails at the pleadings stage under Rule 12(b)(6). Defendant's arguments are addressed in turn.

#### A. Breach of the Term Sheet's Exclusivity Provision

Plaintiff first claims that Defendant breached the term sheet's exclusivity provision in the 56 days after the parties signed the agreement. Defendant ultimately moves to dismiss this claim only on the ground that the complaint does not clearly allege that Defendant breached the provision during that 56-day period. (*See* Dkt. No. 15 ("Def.'s Reply") at 4-5.) Although the complaint is not a model of clarity, it adequately alleges that Defendant breached its obligations during the 56-day period — not just afterwards. It asserts that Defendant breached the "initially agreed upon exclusivity obligations under the parties' agreement." (Compl. ¶ 34.) And it contains factual allegations to that effect. For example, it states that RevCascade "began regular discussions with Fabric" during the exclusivity period relating to a contract to provide services to a company named ABG, (Compl. ¶ 16), and "began to negotiate with Fabric during the exclusivity period," (Compl. ¶ 26.) The complaint further alleges that RevCascade "slow walked its provision of information . . . to permit RevCascade's management to evade detection for the violation of the exclusivity of the [t]erm [s]heet." (Compl. ¶ 34.). Such allegations gave Defendant fair notice that Plaintiff was alleging a breach during the contractual period. *See* Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

From the facts alleged, it is at least plausible that Defendant negotiated with Fabric during the 56-day period. *See Iqbal*, 556 U.S. at 678. As alleged, Defendant held "regular discussions" with Fabric during this period (*see* Comp. ¶ 16), and communicated an offer from

5

Fabric during this period (*see* Compl. ¶ 28.) Further, the complaint alleges that, on the first day after the 56-day period elapsed, RevCascade posted documents to a data room intended for negotiations "to make them accessible to Fabric." (Compl. ¶ 33.) Such allegations support "the reasonable inference" that Defendant jumped the gun. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff has stated a claim that Defendant breached the exclusivity agreement during the 56-day period.

      B.      **Breach of the Alleged Extended Period of Exclusivity**

The complaint alleges that the parties "agreed to extend the exclusivity period" through "their words and conduct" (Compl. ¶ 41), but as Defendant argues, the complaint does not adequately allege the existence of an express or implied agreement. Among other things, "[t]o state a breach claim, a plaintiff must allege . . . the existence of a contract." *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020) (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). Such allegations must at least detail "the formation of the contract" and "the contract's major terms." *Id.* The complaint does not detail an express contract because it does not detail what promise RevCascade made to 3C. Allegations that RevCascade "assur[ed], through words and actions, that [3C] would have time during an extended period of exclusivity to undertake [a] review [of the Souler lawsuit]," (Compl. ¶ 19), are "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678. Absent allegations detailing "what form such agreement took" and "when it was agreed to," such allegations cannot support an inference that RevCascade made a promise. *Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-CV-11118, 2021 WL 4481183, at *17 (S.D.N.Y. Sept. 30, 2021).

Further, although the complaint broadly summarizes what RevCascade agreed to do — not negotiate with others for as long as it took for 3C to evaluate the Souler lawsuit — it does not say what commitment, if any, 3C made to RevCascade, or what mutual consideration supported

any agreement to extend.  (*See* Compl. ¶ 19.)  Absent such allegations, Plaintiff cannot state a claim based on allegations of a breach after the 56-day period expired.  *Cf. Cambridge Cap. LLC*,  2021 WL 4481183, at *17 (S.D.N.Y. Sept. 30, 2021) (dismissing claim that exclusivity period was extended absent allegations about "whether any consideration was exchanged for the extension"); *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 184 (S.D.N.Y. 2009) (dismissing claim absent allegations about agreement's "consideration").

For similar reasons, Plaintiff has not adequately alleged any implied agreement.  "[A] contract implied in fact may result as an inference from the facts and circumstances of the case, though not formally stated in words." *Sackin v. Transperfect Glob. Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017).  But "[a]n implied contract, like an express contract, requires 'consideration, mutual assent, legal capacity and legal subject matter.'" *Id.*  Because the complaint does not detail what commitment 3C Limited Group implicitly made to RevCascade, or what mutual consideration supported that implied agreement, Plaintiff has not alleged any implied extension.  Allegations that Defendant breached an extended period of exclusivity are therefore dismissed.

    **C.**    **Promissory Estoppel**

To state a claim for promissory estoppel, a party must allege "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by [the plaintiff]." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995).  For the reasons already explained, the complaint does not adequately allege a clear and unambiguous promise from RevCascade.  Allegations that RevCascade "agreed to extend the exclusivity period so that [an] audit could be done" merely "state[] a legal conclusion — that [RevCascade] made a[n] . . . agreement — without any factual enhancement to support an inference that [RevCascade] made a clear and unambiguous promise." *Lamda Sols. Corp. v.*

7

*HSBC Bank USA, N.A.*, No. 21-CV-2259, 2021 WL 5772290, at *6 (S.D.N.Y. Dec. 6, 2021).  In addition, absent information about when the promise was made, it is not possible to determine whether the term sheet's exclusivity provision might control.  (*See* Dkt. No. 11-3 ("Def.'s Memo") at 10); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009).  Accordingly, the promissory estoppel claim is dismissed as well.

### D. Breach of the Covenant of Good Faith and Fair Dealing

Finally, Plaintiff has not stated a claim that Defendant breached the covenant of good faith and fair dealing.  The complaint does not allege the existence of any "legal duty separate and apart from [Defendant's] contractual duties."  *Washington v. Kellwood Co.*, No. 5-CV-10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009).  Further, the claim, as pleaded, merely repeats the breach-of-contract claim.  A claim is duplicative where it is "based on the same facts."  *Giller v. Oracle USA, Inc.*, 512 F. App'x 71, 73 (2d Cir. 2013) (summary order).  On this point, the complaint could not be clearer: It alleges that RevCascade breached "the initially agreed upon exclusivity obligations under the parties' agreement'" in part because RevCascade "was unreasonably slow to provide materials necessary to 3C's due diligence" and then "pursue[d] a deal with Fabric."  (Compl. ¶ 34.)  It then alleges that RevCascade breached the covenant because RevCascade "slow rolled due diligence materials" and "negotiated with Fabric during the exclusivity period."  (Compl. ¶ 48.)  Other allegations that RevCascade "plainly never intended to present [3C's proposal] to its shareholders" or that RevCascade "failed to negotiate terms with 3C in good faith" are conclusory.  *See Iqbal*, 556 U.S. at 578.  The complaint leaves no room to consider these claims separately.  Accordingly, the claim that RevCascade failed to act in good faith is dismissed.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part. Plaintiff has stated a claim that Defendant breached the exclusivity provision during the 56-day period described in the term sheet. But Plaintiff has not stated a claim that Defendant breached any exclusivity agreement after the 56-day period expired; violated any principles of promissory estoppel; or violated any duty to negotiate in good faith. Those claims are dismissed without prejudice because amendment would not necessarily be futile.

Defendant shall file an answer to the surviving claim within 21 days after the date of this opinion and order. Plaintiff has thirty days to amend the complaint, or Plaintiff may proceed on the sole remaining claim.

The parties' motion for a hearing on this motion (Docket Number 21) is denied as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 11 and 21.

SO ORDERED.

Dated: March 21, 2022
       New York, New York

_____
J. PAUL OETKEN
United States District Judge